**HUNTER PYLE, SBN 191125**
**DANIEL BROME, SBN 278915**
HUNTER PYLE LAW, PC
505 14th Street, Suite 600
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile:  (510) 444-4410
Emails:   hunter@hunterpylelaw.com;
        dbrome@hunterpylelaw.com

Attorneys for Plaintiff
TYLEE HARVISON

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLEE HARVISON,<br><br>            Plaintiff,<br><br>     v.<br><br>EARTHGRID PBC, a Delaware corporation;<br>TROY HELMING, an individual,<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **FAILURE TO PAY OVERTIME WAGES (Labor Code §§ 510, 1194, Wage Order No. 16);**<br>2. **VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OVERTIME COMPENSATION PROVISIONS (29 U.S.C. §§ 201, *et seq*.);**<br>3. **FAILURE TO PROVIDE OFF-DUTY MEAL PERIODS (Labor Code §§ 226.7, 512, Wage Order No. 16);**<br>4. **FAILURE TO AUTHORIZE AND PERMIT REST PERIODS (Labor Code § 226.7, Wage Order No. 16);**<br>5. **FAILURE TO FURNISH ACCURATE WAGE STATEMENTS (Labor Code § 226);**<br>6. **FAILURE TO PAY ALL WAGES DUE UPON TERMINATION (Labor Code §§ 201-203); and**<br>7. **RETALIATION AND WRONGFUL TERMINATION (Labor Code §§ 98.6, 1102.5)**<br>**DEMAND FOR JURY TRIAL** |

## I.    INTRODUCTION

1.     Plaintiff TYLEE HARVISON ("Plaintiff") was employed by Defendant EARTHGRID PBC ("EARTHGRID") as a Generator Mechanic from October 9, 2023 through January 8, 2026.

2.     Defendant TROY HELMING ("HELMING") (collectively with EARTHGRID, "Defendants") is the Chief Executive Officer of EARTHGRID and exercised control over employment decisions, including Plaintiff's wages, hours, and termination.

3.     Plaintiff's duties included inspecting, servicing, and maintaining generators, heavy equipment, and crew vehicles; performing repairs; conducting preventative maintenance; and preparing inspection, maintenance, and work reports.

4.     During Plaintiff's employment, he regularly worked substantial overtime hours without receiving overtime premium pay, despite Defendants' knowledge that he was working well in excess of forty hours per week and/or eight hours per day.

5.     Defendants required Plaintiff to work continuous shifts that often prevented him from taking meal and rest periods, yet failed to provide meal and rest period premiums for missed breaks.

6.     Throughout his employment, Defendants failed to accurately track Plaintiff's hours worked and failed to provide wage statements that complied with California law.

7.     In December 2025 and early January 2026, Plaintiff raised concerns with EARTHGRID management about his misclassification and unpaid overtime wages.

8.     Just two days after Plaintiff's final conversation with management about his unpaid wages, Defendants terminated Plaintiff's employment in retaliation for his protected complaints.

9.     Plaintiff brings this action against Defendants for: (1) failure to pay overtime wages; (2) violations of the Fair Labor Standards Act overtime compensation provisions; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to furnish accurate wage statements; (6) failure to pay all wages due upon termination; and (7) retaliation and wrongful termination in violation of federal and California law.

## II.    PARTIES

10.    Plaintiff is a resident of Contra Costa County, California.

**1**

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

11. Defendant EARTHGRID is a Delaware corporation with its principal place of business located at 1 West Barrett Ave, Richmond, California 94801, in Contra Costa County, California. EARTHGRID is registered to do business in California. At all times relevant hereto, EARTHGRID was an "employer" within the meaning of the Fair Labor Standards Act ("FLSA"), the California Labor Code, and applicable Industrial Welfare Commission ("IWC") Wage Order No. 16. EARTHGRID exercised control and direction over Plaintiff's employment, including determining his wages, work schedule, job duties, and terms and conditions of employment. EARTHGRID employed Plaintiff as a Generator Mechanic from approximately October 9, 2023 until approximately January 8, 2026.

12. Defendant HELMING is an individual residing in Contra Costa County, California. At all times relevant hereto, HELMING was and is the Chief Executive Officer and founder of EARTHGRID. HELMING is an "employer" of Plaintiff within the meaning of the FLSA, the California Labor Code and applicable IWC Wage Order No. 16. Pursuant to Labor Code section 558.1, HELMING is personally liable as an employer because he had control over Plaintiff's wages, work schedule, hiring, firing, and other employment decisions.

13. Defendants are covered employers within the meaning of the FLSA.

14. Plaintiff is informed and believes that each Defendant is liable to Plaintiff as an "employer," as that term is defined in Wage Order No. 16. As employers of Plaintiff throughout the relevant time hereto, Defendants are either solely or jointly and severally liable for the economic damages owed to Plaintiff.

### III. VENUE AND JURISDICTION

15. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201 et seq.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

17. This Court has personal jurisdiction over Defendants because a substantial amount of the acts or omissions giving rise to Plaintiff's claims occurred in California, because HELMING resides in

Contra Costa County, and because EARTHGRID's principal place of business is located in Contra Costa County.

## IV. STATEMENT OF FACTS

18.    EARTHGRID is engaged in the business of creating plasma based boring technology to be used for tunneling, trenching, and excavating.

19.    HELMING is the founder and CEO of EARTHGRID. Upon information and belief, HELMING controlled significant aspects of EARTHGRID's operations, including hiring decisions, wage determinations, work schedules, and termination decisions. HELMING personally signed Plaintiff's offer letter. Upon information and belief, HELMING had direct knowledge of and control over Plaintiff's classification as exempt or non-exempt, Plaintiff's wage rates and compensation structure, and the decision to terminate Plaintiff's employment. Upon information and belief, HELMING exercised control over Defendants' employment records, meal period policies, rest period policies, and final wage payment policies.

20.    In August 2023, Plaintiff applied for a Hybrid Power Generator Technician/Diesel Mechanic position at EARTHGRID.

21.    On October 6, 2023, HELMING, on behalf of EARTHGRID, signed an offer letter extending employment to Plaintiff. Plaintiff signed the offer letter on October 9, 2023.

22.    The offer letter set forth terms of Plaintiff's employment, including his job title as Generator Mechanic, his reporting relationship to the Fleet Manager, and his compensation.

23.    The offer letter stated that Plaintiff's position was a full-time position with a schedule of two weeks on, one week off.

24.    The offer letter provided that Plaintiff would be paid a starting salary of $72,800 per year, and $2,250 per month to cover his expenses.

25.    The offer letter did not include any explanation of why Defendants intended to classify Plaintiff as exempt from overtime, or whether they thought any exemption applied to Plaintiff's work as a Generator Mechanic.

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

26.     Throughout Plaintiff's employment with Defendants, Plaintiff's primary duties included inspecting, servicing, and maintaining generators, heavy equipment, and crew vehicles; performing electric, hydraulic, and mechanical repairs; conducting preventative maintenance; preparing inspection, maintenance, and work reports; operating tools and machinery; and other general mechanic duties as assigned.

27.     From October 2023 through approximately May 2024, Plaintiff's permanent residence was in Louisiana. Plaintiff worked a schedule of two weeks on, one week off. When traveling to California to work, Plaintiff worked long hours, typically working approximately 80 hours per week during the working weeks.

28.     In the summer of 2024, Plaintiff moved to California.

29.     From approximately June 2024 through the end of his employment in January 2026, Plaintiff continued to work long hours, generally working 60 to 65 hours per week.

30.     For example, Plaintiff worked nearly two weeks straight around the week of Thanksgiving in 2024 to finish work on an excavator. During the workweek from November 24 to November 30, 2024, Plaintiff worked well over 60 hours, without receiving any overtime premiums or all required meal and rest periods.

31.     Throughout Plaintiff's employment, Defendants knew that Plaintiff worked more than eight hours per day and more than forty hours per week.

32.     Despite this knowledge, Defendants never paid Plaintiff overtime premium payments for the overtime hours he worked, and instead always paid him a flat salary. At no time during Plaintiff's employment did Defendants pay him an overtime premium rate of one and one-half times his regular rate of pay for hours worked in excess of eight hours in a workday or in excess of forty hours in a workweek, or at a double-time premium rate for hours worked in excess of twelve hours in a workday.

33.     On or about June 2024, EARTHGRID increased Plaintiff's annual salary from $72,800 to $105,000. On or about January 2025, EARTHGRID increased Plaintiff's annual salary from $105,000 to $125,000.

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

34.      Plaintiff's job duties as a Generator Mechanic entailed working on complex repairs and maintenance tasks. Because of the nature of these job duties, Plaintiff was often not able to take meal or rest periods during his shifts.

35.      Throughout Plaintiff's employment, Defendants failed to provide Plaintiff with meal periods of at least thirty minutes when Plaintiff worked more than five hours in a workday. Defendants also failed to provide Plaintiff with a second meal period of at least thirty minutes when Plaintiff worked more than ten hours in a workday.

36.      Defendants did not pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that a required meal period was not provided.

37.      Throughout Plaintiff's employment, Defendants failed to authorize and permit Plaintiff to take rest periods of at least ten minutes for every four hours worked, or major fraction thereof.

38.      Defendants did not pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that required rest periods were not authorized and permitted.

39.      Throughout Plaintiff's employment, Defendants failed to accurately track the hours Plaintiff worked each pay period.

40.      Throughout Plaintiff's employment, Defendants failed to provide Plaintiff with wage statements that identified the total number of hours Plaintiff worked during each pay period, the applicable hourly rates in effect during each pay period, or other information required by Labor Code section 226.

41.      On or about December 16, 2025, Plaintiff discussed his classification and unpaid wages with Mark Park, the Vice President of Engineering for EARTHGRID. During this discussion, Plaintiff and Mr. Park agreed to explore reclassifying Plaintiff into an hourly, non-exempt role. Plaintiff and Mr. Park also discussed their understanding that Plaintiff had been working overtime hours without receiving overtime premium pay throughout his employment with Defendants.

42.      On or about January 6, 2026, Plaintiff and Mr. Park spoke again regarding Plaintiff's classification and unpaid wages. Mr. Park agreed to escalate the issue of Plaintiff's classification and unpaid overtime wages.

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

43.    Defendants did not take any steps to reclassify Plaintiff into a non-exempt, hourly position following these discussions. Defendants did not pay Plaintiff any back wages for his unpaid overtime hours following these discussions.

44.    Upon information and belief, on January 8, 2026, just two days after Plaintiff's final conversation with Mr. Park about his unpaid wages and classification, Ben Corwin, the Vice President of Operations for EARTHGRID, informed Plaintiff that EARTHGRID was terminating his employment.

45.    Upon information and belief, Defendants were motivated to terminate Plaintiff because Plaintiff raised concerns about his classification and unpaid overtime wages.

46.    Upon information and belief, HELMING was directly involved in and approved the decision to terminate Plaintiff's employment.

47.    At the time of Plaintiff's termination on January 8, 2026, Defendants failed to pay Plaintiff all wages due and owing, including unpaid overtime wages, unpaid meal period premiums, and unpaid rest period premiums.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Failure to Pay Overtime Wages**
**[Cal. Labor Code §§ 510, 1194; IWC Wage Order No. 16]**
**(against all Defendants)**

48.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

49.    At all times relevant to this action, California Labor Code section 510 and IWC Wage Order No. 16 were in full force and effect and required Defendants to pay overtime compensation to nonexempt employees.

50.    Pursuant to Labor Code section 510, "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee."

51.     Pursuant to Wage Order No. 16, section 3(A), "[e]mployment beyond eight (8) hours in any workday . . . is permissible provided the employee is compensated for such overtime at not less than: (a) One and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any workday . . .; and (b) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any workday . . . ."

52.     Throughout his employment, Defendants required, suffered, or permitted Plaintiff to work in excess of eight hours per workday and in excess of 40 hours per workweek without paying overtime compensation as required by law.

53.     Specifically, from October 2023 through May 2024, Plaintiff regularly worked approximately 80 hours per week during his working weeks. From June 2024 through January 2026, Plaintiff regularly worked 60 to 65 hours per week.

54.     Throughout Plaintiff's employment, Defendants had actual knowledge that Plaintiff was working substantial overtime hours but willfully and intentionally failed to pay Plaintiff any overtime premium compensation.

55.     By failing to pay overtime and double-time compensation to Plaintiff, Defendants have violated Labor Code section 510 and Wage Order No. 16, section 3.

56.     Defendant HELMING is individually liable for these violations pursuant to Labor Code section 558.1 because he exercised control over Plaintiff's wages and had authority over the decision to pay or not pay overtime compensation, as alleged in paragraphs 12 and 19, above.

57.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in the form of unpaid overtime wages, together with interest thereon, in amounts according to proof at trial.

58.     WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

**SECOND CAUSE OF ACTION**
**Violations of the Fair Labor Standards Act - Overtime Compensation**
**[29 U.S.C. §§ 201, et seq.]**
**(against all Defendants)**

59.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

60.    Section 7 of the Fair Labor Standards Act makes it unlawful for any employer to employ any employee for a workweek longer than 40 hours unless such employee receives compensation for employment in excess of 40 hours per workweek at a rate not less than one and one-half times the regular rate at which the employee is employed. 29 U.S.C. section 207(a)(1).

61.    Plaintiff is a former nonexempt employee entitled to be paid overtime compensation for all overtime hours worked.

62.    From October 2023 through January 2026, Plaintiff regularly worked more than 40 hours per workweek. Despite having actual knowledge of the overtime hours Plaintiff worked, Defendants willfully failed to compensate Plaintiff for time worked in excess of 40 hours per week at a rate of at least one and one-half times his regular rate of pay, in violation of the requirements of the FLSA.

63.    Defendants failed to make a good-faith effort to comply with the overtime payment requirements of the FLSA with respect to compensation paid to Plaintiff.

64.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. section 255.

65.    As a consequence of the willful underpayment of wages alleged above, Plaintiff has incurred damages in the form of unpaid overtime compensation and is entitled to liquidated damages in an amount equal to the unpaid overtime compensation, together with attorneys' fees and costs, in amounts according to proof at trial.

66.    WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

**THIRD CAUSE OF ACTION**
**Failure to Provide Off-Duty Meal Periods**
**[Cal. Labor Code §§ 226.7, 512; IWC Wage Order No. 16]**
**(against all Defendants)**

67.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

68.    At all times during Plaintiff's employment by Defendants, Labor Code sections 226.7 and 512, and IWC Wage Order No. 16 were in full force and effect and required Defendants to provide employees who work in excess of five hours per day a meal period of at least 30 minutes in which they are relieved of all duties, and to pay one additional hour of pay at the regular rate of compensation for each workday that the lawful meal periods were not provided.

69.    Plaintiff regularly worked in excess of five hours a day and ten hours a day, without being provided at least a thirty-minute meal period in which he was relieved of all duties, as required by Labor Code sections 226.7 and 512, and Wage Order No. 16, section 10.

70.    Throughout his employment, Plaintiff was entitled to meal periods because he regularly worked shifts exceeding five hours and frequently worked shifts exceeding ten hours. During these shifts, Plaintiff was often unable to take meal periods because his job duties entailed working on complex repairs and maintenance tasks that could not be interrupted. The nature and demands of Plaintiff's job duties as a Generator Mechanic required him to complete repairs and maintenance work without taking meal breaks.

71.    Throughout Plaintiff's employment, Defendants had actual knowledge that Plaintiff was missing meal periods but willfully failed to provide Plaintiff with compliant meal periods and failed to pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that the lawful meal periods were not provided.

72.    Defendants did not maintain adequate and accurate records of all wages earned, hours worked, and meal periods taken, in violation of Wage Order No. 16, section 6.

73.    Because Defendants failed to provide off-duty meal periods, Defendants are liable to Plaintiff for one hour of additional pay at the regular rate of compensation for each workday that the

9

proper meal periods were not provided, pursuant to Labor Code section 226.7 and Wage Order No. 16, section 10.

74.    Defendant HELMING is individually liable for these violations pursuant to Labor Code section 558.1 because he exercised control over Plaintiff's wages and working conditions and had authority over employment policies regarding meal periods, as alleged in paragraphs 12 and 19 above.

75.    By violating Labor Code section 226.7 and Wage Order No. 16, section 10, Defendants are also liable for interest under Labor Code section 218.6 and reasonable attorneys' fees and costs under Labor Code section 218.5.

76.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered economic damages in amounts to be determined at trial.

77.    WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

## FOURTH CAUSE OF ACTION
### Failure to Authorize and Permit Rest Periods
### [Cal. Labor Code § 226.7; IWC Wage Order No. 16]
### (against all Defendants)

78.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

79.    At all times during Plaintiff's employment by Defendants, Labor Code section 226.7 and IWC Wage Order No. 16 were in full force and effect and required Defendants to authorize and permit a rest period of at least ten minutes for every four hours worked, or major fraction thereof, and to pay one additional hour of pay at the regular rate of compensation for each workday that a lawful rest period was not provided.

80.    Plaintiff regularly worked in excess of three and one-half hours a day without being permitted to take at least a ten-minute rest period for every four hours worked, or major fraction thereof, as required by Labor Code section 226.7 and Wage Order No. 16, section 11.

81.    Throughout Plaintiff's employment, Plaintiff was often unable to take rest periods because his job duties entailed working on complex repairs and maintenance tasks. The workload and nature of Plaintiff's duties as a Generator Mechanic required continuous work that prevented him from taking the rest periods required by law.

82.     Throughout Plaintiff's employment, Defendants had actual knowledge that Plaintiff was missing rest periods but willfully failed to authorize and permit Plaintiff to take compliant rest periods and failed to pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday that lawful rest periods were not provided.

83.     Because Defendants failed to permit proper rest periods, Defendants are liable to Plaintiff for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not authorized, pursuant to Labor Code section 226.7 and Wage Order No. 16, section 11.

84.     Defendant HELMING is individually liable for these violations pursuant to Labor Code section 558.1 because he exercised control over Plaintiff's wages and working conditions and had authority over employment policies regarding rest periods, as alleged in paragraphs 12 and 19 above.

85.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered economic damages in amounts to be determined at trial.

86.     WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

**FIFTH CAUSE OF ACTION**
**Failure to Furnish Accurate Itemized Wage Statements**
**[Cal. Labor Code § 226(a); IWC Wage Order No. 16]**
**(against all Defendants)**

87.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

88.     Labor Code section 226(a) requires every employer to furnish each employee an accurate itemized statement in writing showing, among other things, total hours worked by the employee and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

89.     Throughout Plaintiff's employment from October 2023 through January 2026, Defendants knowingly and intentionally failed to provide Plaintiff with accurate itemized wage statements as required by Labor Code section 226(a).

90.     Specifically, Defendants failed to provide Plaintiff with wage statements that identified the total hours Plaintiff worked during each pay period, the applicable hourly rates in effect, or the corresponding number of hours worked at each rate.

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

91.    Defendants failed to maintain adequate and accurate records of all wages earned and hours worked by Plaintiff, in violation of Wage Order No. 16, section 6.

92.    Plaintiff suffered injury as a result of Defendants' knowing and intentional violation of Labor Code section 226(a) because Plaintiff could not readily determine from the wage statements provided how many hours he worked in a pay period or what wages were owed to him for the hours he worked. Plaintiff experienced confusion and uncertainty as to whether he had been paid correctly, and how much he was being paid per hour given his lengthy work hours.

93.    Defendant HELMING is individually liable for these violations pursuant to Labor Code section 558.1 because he exercised control over Plaintiff's wages and employment records, as alleged in paragraphs 12 and 19 above.

94.    Pursuant to Labor Code section 226(e), Plaintiff is entitled to recover the greater of all actual damages or statutory penalties of fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), together with costs and reasonable attorneys' fees.

95.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in amounts to be determined at trial.

96.    WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

### SIXTH CAUSE OF ACTION
**Failure to Pay All Wages Due Upon Termination - Waiting Time Penalties**
**[Cal. Labor Code §§ 201, 203]**
**(against all Defendants)**

97.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

98.    Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge. Labor Code section 203 provides that if an employer willfully fails to pay compensation promptly upon discharge as required under section 201, the employer is liable for waiting time penalties in the form of continued compensation for up to 30 days.

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

99.     Defendants terminated Plaintiff's employment on January 8, 2026.

100.    At the time Defendants terminated Plaintiff's employment, Defendants knew or should have known that Plaintiff was owed unpaid wages, including unpaid overtime wages, unpaid meal period premiums, and unpaid rest period premiums, as alleged herein.

101.    Defendants willfully failed and refused to pay all wages owed to Plaintiff at the time of his termination in violation of Labor Code section 201.

102.    Defendant HELMING is individually liable for these violations pursuant to Labor Code section 558.1 because he exercised control over Plaintiff's wages and had authority over the decision to pay or not pay wages due at termination, as alleged in paragraphs 12 and 19 above.

103.    As a result of Defendants' willful failure to pay all wages due at termination, Defendants are liable to Plaintiff for waiting time penalties under Labor Code section 203.

104.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic damages in amounts to be determined at trial.

105.    WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of California Labor Code §§ 98.6 and 1102.5
### (against all Defendants)

106.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

107.    Labor Code sections 98.6 and 1102.5 prohibit employers from retaliating against employees who engage in protected activity, including complaining about unpaid wages and labor law violations.

108.    On or about December 16, 2025, Plaintiff engaged in protected activity by complaining to Mark Park, EARTHGRID's Vice President of Engineering, about his misclassification and unpaid overtime wages. Plaintiff again raised these complaints with Mr. Park on or about January 6, 2026.

109.    Defendants knew about Plaintiff's protected complaints regarding unpaid wages and improper classification.

110. On January 8, 2026, just two days after Plaintiff's final conversation with Mr. Park about his unpaid wages, Defendants terminated Plaintiff's employment.

111. Defendants' termination of Plaintiff was in retaliation for Plaintiff's protected complaints about unpaid wages and labor law violations, in violation of Labor Code sections 98.6 and 1102.5.

112. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and damage to his professional reputation, in amounts according to proof at trial.

113. WHEREFORE, Plaintiff prays for judgment against all Defendants as set forth below.

## VI. PRAYER FOR RELIEF

114. As a proximate result of the conduct of Defendants, Plaintiff has suffered and continues to suffer economic loss. Plaintiff was required to retain private counsel to vindicate his rights under law.

WHEREFORE, Plaintiff requests relief against Defendants EARTHGRID PBC and TROY HELMING, jointly and severally, as follows:

    a. For compensatory damages for unpaid overtime wages, including interest, according to proof;

    b. For meal and rest period premiums, including interest, according to proof;

    c. For wage statement penalties under Labor Code section 226(e), according to proof;

    d. For waiting time penalties under Labor Code section 203, according to proof;

    e. For liquidated damages under the Fair Labor Standards Act, 29 U.S.C. section 216, for overtime violations, in an amount equal to Plaintiff's unpaid overtime compensation;

    f. For reasonable attorneys' fees and costs under Labor Code sections 218.5, 226(e), and 1194, 29 U.S.C. section 216, and other applicable law;

    g. For pre-judgment and post-judgment interest;

    h. For compensatory damages for wrongful termination, including lost wages, lost benefits, emotional distress, and damage to professional reputation, according to proof;

    i. For such other and further relief as the Court may deem just and proper.

//

//

Dated: May 22, 2026                    HUNTER PYLE LAW, PC


                                       By:   /s/ Daniel Brome
                                             Hunter Pyle
                                             Daniel Brome

                                       Attorneys for Plaintiff
                                       TYLEE HARVISON

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

## **DEMAND FOR JURY TRIAL**

Plaintiff Tylee Harvison hereby demands a jury trial of this matter on all triable claims.

Dated: May 22, 2026                    HUNTER PYLE LAW, PC


                                       By:   /s/ Daniel Brome
                                             Hunter Pyle
                                             Daniel Brome

                                       Attorneys for Plaintiff
                                       TYLEE HARVISON

*HARVISON V. EARTHGRID PBC, ET AL.*
**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**